OTERO & NUÑEZ, Plaintiff and Appellee, *v.* SUCCESSORS OF MANUEL PÉREZ, Defendant and Appellant.

No. 6063. Argued June 14, 1933.—Decided January 12, 1934.

*J. H. Brown, C. Ruiz Nazario,* and *G. E. González* for appellant.  *C. Iriarte* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action for damages.  On April 17, 1928, there was a collision on insular Highway No. 12, Kilometer 1, Hectometer 3, between a truck belonging to the plaintiff that was going from San Juan to Bayamón, and another belonging to the defendant that was going in the opposite direction. Both vehicles were damaged.  The plaintiff's truck remained on the road, as it could not be driven, and the defendant's truck continued on its way.

The plaintiff, alleging that the accident was caused by the negligent driving of the defendant's chauffeur and that the damages amounted to $1,025, asked the court to render judgment ordering the defendant to pay the said sum, together with the costs of the litigation.  The defendant answered the complaint and filed a cross-complaint; it alleged that the accident was not caused by the negligence of its chauffeur but by the negligence of the plaintiff's chauffeur, and asked the court to dismiss the complaint and to order the plaintiff to pay $91.50 as for damages, and the costs of the suit.

After a trial was held, the court rendered judgment for the plaintiff, but fixed the damages at $457, dismissed the cross-complaint, and awarded the costs to the plaintiff.

Thereupon the defendant took the present appeal, and it has assigned in its brief five errors.

The first and the last assignments are as follows:

"I. The court erred and acted with passion, prejudice, and partiality in weighing the evidence in this case and in holding that the accident in question was caused by any negligence on the part of the defendant; and in failing to hold that the accident was solely and exclusively caused by the negligence of the plaintiff.

"V. The court erred in rendering judgment for the plaintiff and in dismissing the cross-complaint."

The assignments are argued skillfully and extensively in the brief, so skillfully that we have at times come to doubt the justice of the judgment appealed from.

However, whatever erroneous conclusions there may be in the opinion on which the judgment appealed from was based, there still remains the fundamental fact that the judge believed the witnesses for the plaintiff and did not believe those for the defendant, with the exception of the defendant's expert, whose testimony he took into consideration in fixing the amount of the damages. And the trial court, as has been said so many times, is in a better position than the appellate court to pass upon this question.

The plaintiff's evidence having been believed, we find in it sufficient support for the judgment appealed from.

For example, the witness Isaac Claudio, who was traveling "inside the body of the truck (of the plaintiff) hanging onto the top," textually said: "We were going from here to there and Lucas Desiderio was sitting on the left-hand side and the Mack (the defendant's truck) was coming very fast, and I said to Lucas: 'Be careful, that Mack is coming and if it hits us . . . .' Coming as it did at a high speed, it struck us in the front." The plaintiff's truck was traveling on the "right-hand side close to the edge of the road." The defendant's truck "struck it with the front part, and when it swerved it struck with the railing, and then struck our top and we fell underneath the top."

Julián Pizarro, who was working on the plaintiff's truck stated: "On April 17, 1928, between 2:30 and 3:00 o'clock in the afternoon, as we were going toward Bayamón, the

Mack truck belonging to Manuel Pérez of Bayamón was coming at high speed, and when our chauffeur saw it coming at high speed, it is a part where two trucks can scarcely pass, two cars at high speed, and our chauffeur nearly stopped when he saw it coming at high speed, and then with its front wheel it struck our front wheel and smashed the whole motor.''

Lucas Desiderio who was also working on the plaintiff's truck hauling stone, stated: ''That Mack car was coming and I was sitting on the left-hand side of the truck and I say to Isaac Claudio, 'Look, that truck is coming', and I got out of the way. The truck was coming ''at about 20 miles . . . . it struck the Seldem truck with its front wheel . . . . At the impact, I was hanging onto the top and I fell with the top onto the road . . . . It broke the motor, bent the axle, and the chassis and several other parts.''

Félix Clemente, who was in charge of the plaintiff's trucks, and who was travelling in the truck involved in the accident herein, testified that they were going toward Bayamón when they saw ''the Mack truck H-187 owned by the Successors of Manuel Pérez of Bayamón, coming toward San Juan at high speed . . . . Our car reduced its speed, and the other which was coming at high speed attempted to stop but could not do so, and then it struck ours which was then and there demolished.''

Aureliano A. Martínez, an insular policeman, and Félix R. Zayas, a highway overseer, testified for the plaintiff in respect to the condition of the locality in which the accident occurred as follows: the former, that this place is ''narrow, it is necessary to go very slowly,'' and the latter that ''I was weighing trucks that day and I heard the noise of the collision and I could not go immediately and when I went about a quarter of an hour had passed and I found truck H-187 that was coming from there . . . . The Seldem was demolished, on the right side toward Bayamón.'' The road is ''straight . . . . quite narrow . . . . it was necessary to

pass not very fast'' and when crossing ''to reduce the speed.'' On the edge of the road ''what there was . . . . was stone in blocks because they had not fixed that part.''

In analyzing the evidence the appellant lays great emphasis upon the fact that the majority of the witnesses for the appellee were its employees, or employees of its attorney, who is the owner of the quarry from which the stone carried in the plaintiff's truck was taken. Such a circumstance does not render the employees incompetent to testify as witnesses. If an absolute impediment had existed, the plaintiff would have been prevented from proving its case however just it might have been.

Undoubtedly the testimony of said employees should be examined with great care. The opposing party, through his attorneys, had the powerful weapon of cross-examination, which was in truth powerfully and skillfully used in this case.

We may doubt, and we have already said that we have doubted, whether the trial court should have acted as it did, but this doubt is not sufficient to justify the conclusion that the trial judge was moved by passion, prejudice, or partiality, or that he committed any error so flagrant that it must necessarily be concluded that his judgment was manifestly erroneous.

Perhaps we should add that when we made a study of the testimony of the witnesses for the defendant, who were also cross-examined extensively and skillfully, we felt the same hesitation. The judgment of the district court must stand. The errors assigned which we have just discussed were not committed.

By the second assignment it is maintained that ''the court erred in making an inspection and in effecting an experiment, during said inspection, with vehicles that took no part in the accident occurred, and in basing its findings on said inspection and experiment.''

The report of the inspection says:

"At 4:00 p. m. on December 30, 1929, the court convened at the place called 'Terraplén' on the highway that leads from Santurce to Bayamón, for the purpose of making an inspection requested by the parties.

"After arriving at the site designated by Hectometer 3 of Kilometer 1 of said highway, the court was able to observe, with the concurrence of both parties who appeared at the inspection, the following facts:

"The place designated in the complaint is one in which the highway forms a flat and straight expanse;

"Likewise the court observed that at said place said highway has a span of about five (5) yards. Taking advantage of the favorable circumstance that at said place there happened to be a Mack truck of the same kind and built as the one alleged in the complaint to have caused the accident, the court was able to observe the size and structure of said vehicle and the space that it could reasonably occupy on said highway. From this observation the court can determine that any car that is placed in a diagonal position as the result of a collision, or of any other accident, must necessarily stop the traffic on that highway.

"The court records the fact that both parties agree that the place at which it convened has been altered subsequent to the accident, a levee or road having been built there by placing piles of stones on both sides of the highway, and thereby doing away with the slope or curve that had existed on both sides of the road.

"At this stage of the inspection, the defendant raises an objection thereto, as it is of the opinion that, since the topographical condition of the premises where the accident occurred had changed, the Court could not take exact account of the place as it existed at the time of the accident.

"The court then terminated the inspection reported in this document, which the court orders to be attached to the record as a part thereof."

Later the trial judge, in his statement of the case and opinion, said:

"The inspection made revealed to the court that at the place where the accident occurred, the highway follows a flat straight course, and that even though it had been widened subsequent to the accident, the judge could reconstruct the location by taking advantage of the favorable circumstance first of observing the Mack

truck involved in this suit, and then of examining closely another truck of the same make, kind, and build as the former.''

Section 1194 of the Civil Code, 1930 ed., which is identical with section 1208 of the Code of 1902, 1911, ed., and section 1240 of the Spanish Civil Code, provides that ''evidence by personal inspection by the court or judge shall only be effective in so far as it clearly permits the court to judge, by the external appearance of the thing inspected, of the fact which he desires to ascertain.''

The report is clear, as is also what appears from the judge's opinion. The change in the premises was noted, and only what could properly be taken notice of was observed. The straightness and narrowness of the road subsisted. It was also confirmed by the testimony of the witnesses including that of the witnesses for the defendant. What was done with the truck that happened to pass, after the judge had seen the defendant's truck, did not amount to an experiment made under different conditions that might have led to erroneous conclusions. No error was committed, and if so, it was harmless.

The third assignment is formulated thus: ''The court erred in admitting in evidence photographs that were taken some days after the accident had occurred, when the position of the truck had been changed.''

Photographs, when properly identified, are admissible to aid in a better understanding of the evidence, or to establish the locality, condition, or place in which certain objects or things pertinent or allusive to the question at issue may be found. See *Dragoni* v. *U. S. Fire Ins. Co., et al.,* 36 P.R.R. 425.

Here the photographs—which, by the way, were not sent up to this Supreme Court with the transcript—were identified as having been taken on the day following the accident. The plaintiff's car was not on the exact spot on which it remained as a result of the collision, across the road, since, in order to restore traffic, it was immediately pushed to the side of

the road by the defendant's own truck; but the photograph was neither presented nor taken for the purpose of showing the respective positions of the cars after the accident, but to show the damages suffered by the plaintiff's car.

The only time that the district judge refers to the photograph in his opinion, he does so in the following terms: "That the 'Seldem' was struck is shown not only by the photograph but by the statement of the witness José Cuevas Padilla, whom the court fully believed." The 'Seldem' was the plaintiff's truck, and Cuevas Padilla testified as the defendant's expert.

Under these circumstances, there was no error in the admission of the photograph, and if there was, it was harmless.

Only the fourth assignment, relating to costs, remains to be considered.

The appellant maintains that in order that costs may be imposed on a party in a suit, it is necessary to show his culpability, his obstinacy, and his bad faith, and cites the cases of *Soto Gras* v. *Domenech,* 42 P.R.R. 506, *Morales* v. *Peña et al.,* 40 P.R.R. 177, and *Finlay* v. *Fabián & Co.,* 24 P.R.R. 140.

We do not agree. Any of the said elements is sufficient. The concurrence of the three is not necessary. What happens is that the concept of culpability referred to in section 327 of the Code of Civil Procedure is synonymous with that of obstinacy or of bad faith for the purpose of the imposition of costs. (*Vivas et al.* v. *Hernáiz Targa & Co.,* 24 P.R.R. 779, *Martínez et al.* v. *Padilla,* 19 P.R.R. 555.) In the case of Finlay, *supra,* what this court said in citing that of *Martínez* v. *Padilla, supra,* was: "As to the allowance of costs and disbursements, the judge may impose them at his discretion in any case where culpability, temerity, or bad faith exists." The other two cases cited do not support the appellant's contention.

The appellant also urges that, as the court reduced the amount of the damages claimed, the imposition of costs was not justified.

We do not agree to that, either. It is a circumstance which might be considered by the court in exercising its discretion to impose the costs, as well as to determine the amount thereof, but we can not accept that the mere fact that the claim for damages is reduced should necessarily mean that no costs could be imposed.

It is true that a party from whom an excessive amount is claimed is entitled to defend himself, but if that is his only defense, he should confine himself to pleading the same and admitting the corresponding liability. If he does this and the court adjudges him to be right, it is then clear that no costs could be imposed.

The judgment appealed from must be affirmed.

Mr. Justice Aldrey concurs in the result.